# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### On Brief March 5, 2013

## STATE OF TENNESSEE v. CARLETHA JEFFERSON

### Appeal from the Criminal Court for Shelby County
### No. 10-07560   Paula Skahan, Judge

### No. W2012-00616-CCA-R3-CD - Filed August 1, 2013

Appellant, Carletha Jefferson, was convicted by a Shelby County jury of voluntary manslaughter and aggravated assault. The trial court sentenced Appellant to an effective sentence of six years. On appeal, Appellant argues that the evidence was insufficient to support her conviction for aggravated assault and that the trial court erred in denying her requests for judicial diversion and probation. After a thorough review of the record, we affirm the judgments of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court is Affirmed.

JERRY L. SMITH, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and ROGER A. PAGE, J., joined.

R. Todd Mosley, Memphis, Tennessee, for the appellant, Carletha Jefferson.

Robert E. Cooper, Jr., Attorney General and Reporter; Jeffrey D. Zentner, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Betsy Wiseman, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Factual Background

In June 2010, Appellant and Courtney Riley, one of the victims in this case, were living together in an apartment with their infant son. On the morning of June 8, Mr. Riley and Appellant began arguing because Mr. Riley came home early in the morning from being out with his friends. At some point during the argument, Mr. Riley pushed Appellant. He also took the keys to their apartment and locked the door while they were outside. The baby was still inside, and Appellant punched out a window with her hand to get back inside the

apartment. When they got back inside, Appellant began to threaten Mr. Riley with a knife from the kitchen. Mr. Riley grabbed a stick to defend himself. Mr. Riley called his mother and stepfather to come pick him up.

Mr. Riley's parents arrived and were able to get the knife from Appellant. However, the situation escalated again, and Appellant retrieved the knife and began to chase Mr. Riley down the street. Mr. Riley's stepfather called the police because he was concerned that the situation was getting out of hand. Witnesses testified that Mr. Riley was laughing and giggling as he ran down the street from Appellant. Appellant was yelling, "I better not catch you," at Mr. Riley as she chased him. At some point, Appellant had also grabbed a piece of wood, so she was now carrying the knife and a piece of wood. As Mr. Riley ran down the street he passed Ariella Pruitt, one of the victims. Ms. Pruitt was walking with her nine-year-old cousin to Ms. Pruitt's mother's house to visit her mother and younger brother. Ms. Pruitt asked Mr. Riley if he was alright and said that Appellant was "crazy." Mr. Riley agreed with Ms. Pruitt and continued down the street.

When Appellant reached Ms. Pruitt, she asked her who she was. Ms. Pruitt's cousin testified that Ms. Pruitt ignored Appellant and attempted to keep walking. However, Appellant would not be ignored and slapped Ms. Pruitt. The two women then began to fight.

A witness sitting in his car across the street, Mr. William Rozier, testified that he saw Appellant walking down the street and she looked very angry. He saw Appellant wave the piece of wood in Ms. Pruitt's face. Appellant dropped the piece of wood when the fight began. Mr. Rozier testified that Appellant grabbed Ms. Pruitt around the neck and stabbed her with the knife three or four times on the right side in the stomach area. Mr. Rozier ran across the street and was able to get the knife away from Appellant. He threw the knife in the yard of a nearby house. The knife was later found by the homeowner. Mr. Rozier called the police on his cellphone. An ambulance arrived, and Ms. Pruitt was taken to the hospital where she died shortly thereafter.

Appellant walked back toward her apartment. Mr. Riley had returned from where he had run to further up the street. As they returned to the apartment, an officer who had arrived on the scene, arrested Appellant.

At trial, Dr. Marco Ross, with the County Medical Examiner's Office, testified that he completed the autopsy of Ms. Pruitt. He said that Ms. Pruitt had sustained a stab wound to the torso that was three to four inches deep and several other minor wounds. Her fatal injuries from the stab wound included a perforation of the diaphragm, spleen, pancreas, and left renal artery and vein.

The Shelby County Grand Jury indicted Appellant for second degree murder for the death of Ms. Pruitt and for aggravated assault against Mr. Riley. A jury trial was held November 1-3, 2011. The jury found Appellant guilty of the lesser included offense of voluntary manslaughter and guilty as charged of aggravated assault. The trial court held a sentencing hearing on March 8, 2012. Appellant was sentenced to six years on the voluntary manslaughter conviction and three years on the aggravated assault conviction both as a Range I, standard offender at thirty percent. The sentences were ordered to be served concurrently. The trial court denied Appellant's requests for both judicial diversion and probation.

## ANALYSIS

### Sufficiency of the Evidence

Appellant was convicted of voluntary manslaughter for the death of Ms. Pruitt and aggravated assault for her actions with regard to Mr. Riley. On appeal, Appellant argues that the evidence was insufficient to support her conviction for aggravated assault. She does not challenge her voluntary manslaughter conviction. The State argues that the evidence was sufficient.

To begin our analysis, we note that when a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" State's witnesses and resolves all conflicts in the testimony in favor of the State. *State v. Cazes*, 875 S.W.2d 253, 259 (Tenn. 1994); *State v. Harris*, 839 S .W.2d 54, 75 (Tenn. 1992). Thus, although the accused is originally deemed with a presumption of innocence, the verdict of guilty removes this presumption and replaces it with one of guilt. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. *Bland*, 958 S.W.3d at 659; *Tuggle*, 639 S.W.2d at 914.

The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979). In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." *See Tuggle*, 639 S.W.2d at 914. As such, this Court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. *State v. Morgan*, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn.

Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." *Matthews*, 805 S.W.2d at 779. Further, questions concerning the credibility of the witnesses and the weight and value to be given to evidence, as well as all factual issues raised by such evidence, are resolved by the trier of fact and not the appellate courts. *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990).

The guilt of a defendant, including any fact required to be proved, may be predicated upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *See State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). Even though convictions may be established by different forms of evidence, the standard of review for the sufficiency of that evidence is the same whether the conviction is based upon direct or circumstantial evidence. *See State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011). As such, all reasonable inferences from evidence are to be drawn in favor of the State. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978); *see Tuggle*, 639 S.W.2d at 914.

In order to prove that Appellant committed aggravated assault, the State had to prove first that Appellant committed an assault by "intentionally or knowingly cause[d] [Mr. Riley] to reasonably fear imminent bodily injury." *See* T.C.A. § 39-13-101(a)(2), -102(a)(1)(B). Appellant argues that the State did not prove that the victim, Mr. Riley, feared imminent bodily injury because he was laughing and giggling as she chased him with the knife.

It is clear that the jury concluded that Mr. Riley did fear bodily injury based upon Appellant's conviction. As stated above, questions concerning the credibility of the witnesses and the weight and value to be given to evidence, as well as all factual issues raised by such evidence, are resolved by the trier of fact and not the appellate courts. *Pruett*, 788 S.W.2d at 561. Furthermore, after a defendant is convicted of a crime, we are to view the evidence in the light most favorable to the State. *Tuggle*, 639 S.W.2d at 914.

Appellant is correct that Mr. Riley's stepfather, Mr. Davis, testified at trial that Mr. Riley was giggling and laughing while Appellant was chasing him with the knife down the street. However, Mr. Riley said that he and Appellant were engaged in an argument. Mr. Riley watched as Appellant broke out the window in their apartment when he did not give her the keys. Appellant began to threaten Mr. Riley with a knife. Mr. Riley testified that he called his mother to come and take him away from the house. He testified that Appellant was chasing him. He stated that he ran away from her because "she was chasing [him] with a knife." Appellant testified that he was not scared of Appellant, but that he was "second guessing." He agreed that when Appellant yelled at him that she better not catch him that he took that to mean that she was going to stab him.

-4-

"The apprehension of imminent bodily harm may be inferred from the conduct of the victim." *State v. Gregory Whitfield*, No. 02C01-9706-CR-00226, 1998 WL 227776, at *2 (Tenn. Crim. App., at Jackson, May 8, 1998). This can even be the case when the victim denies being scared. *Id.* In the case at hand, Mr. Riley testified that he was not scared, but he ran from Appellant as she chased him down the street with a knife and agreed that he was "second guessing" whether Appellant was going to stab him. From the evidence presented at trial, we believe that a reasonable trier of fact could infer that Mr. Riley was in fear of imminent bodily injury.

Therefore, this issue is without merit.

## Probation

On appeal, Appellant argues that the trial court erred in denying her requests for probation. Appellate review of sentencing is for abuse of discretion. We must apply "a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012).

In making its sentencing determination, the trial court, at the conclusion of the sentencing hearing, first determines the range of sentence and then determines the specific sentence and the appropriate combination of sentencing alternatives by considering: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts regarding sentences for similar offenses; (7) any statements the defendant wishes to make in the defendant's behalf about sentencing; and (8) the potential for rehabilitation or treatment. T.C.A. §§ 40-35-210(a), (b), -103(5); *State v. Williams*, 920 S.W.2d 247, 258 (Tenn. Crim. App. 1995).

The trial court is still required to place on the record its reasons for imposing the specific sentence, including the identification of the mitigating and enhancement factors found, the specific facts supporting each enhancement factor found, and the method by which the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. *See Bise*, 380 S.W.3d at 706, n.41; *State v. Samuels*, 44 S.W.3d 489, 492 (Tenn. 2001). Thus, under *Bise*, a "sentence should be upheld so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Bise*, 380 S.W.3d at 710.

As a result of the 2005 sentencing amendments, a defendant is no longer presumed to be a favorable candidate for alternative sentencing. *State v. Carter*, 254 S.W.3d 335, 347 (Tenn. 2008) (citing T.C.A. § 40-35-102(6)). While a presumption no longer exists, an especially mitigated or standard offender convicted of a Class C, D, or E felony is still considered a "favorable candidate" for alternative sentencing in the absence of evidence to the contrary. *Id.* A defendant is eligible for an alternative sentence if his sentence is ten years or less. T.C.A. § 40-35-303.

In determining a defendant's suitability for a non-incarcerative sentencing alternative, the trial court should consider whether:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant . . . .

T.C.A. § 40-35-103(1)(A)-(C).

The court should also consider the defendant's potential for rehabilitation or treatment in determining the appropriate sentence. T.C.A. § 40-35-103(5). In choosing among possible sentencing alternatives, the trial court should also consider Tennessee Code Annotated section 40-35-103(5), which states, in pertinent part, "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed." T.C.A. § 40-35-103(5); *State v. Dowdy*, 894 S.W.2d 301, 305 (Tenn. Crim. App. 1994). A defendant is eligible for probation "if the sentence actually imposed . . . is (10) years or less . . . ."

Appellant's sentence was less than ten years, therefore, she was eligible for probation. The trial court made the following findings at the sentencing hearing:

[Appellant], I hope that you realize now, this is a horrible, horrible, horrible case.

I was at least hoping you could come in here and apologize to the family. You have devastated them, and these children, are never going to know their mother.

. . . .

No matter what I sentence you, you're going to be back out on those streets very soon. No matter what I do, that jury gave you a huge, huge, break. You're not going to serve anything at one hundred percent.

Again, no matter what I try to do to punish you for your temper and what you did to an innocent person walking down a street to go see her mother and her younger brother, which she had every right to do, in the middle of the day, and she just was in the wrong place at the wrong time because [Appellant] was on a mission to hurt somebody, and you killed her. Because she hollered out to a friend who looked like he was about to be stabbed. Are you okay.

And you turned that fury on her. And now she's gone.

. . . .

You were working. You don't have any criminal history prior to this other than two charges as a juvenile, which were adjudicated, adjusted nonjudicially, and you have no prior run-ins with the law. Of course, you were very young when you picked up this charge.

. . . .

As far as probation considerations, considering the presentence report, the facts and circumstances surrounding the offense, physical and mental condition and social history.

You have had a difficult life. Your mother died at a very young age. You've been it looks like back and forth between relatives. Prior criminal history or lack thereof in this case.

Whether or not you might reasonably be expected to be rehabilitated. Whether or not the interests of society will be protected from possible future criminal conduct. And whether or not a sentence of full probation would

unduly depreciate the seriousness of the offense. Whether or not the offense is particularly enormous, gross or heinous.

I think that this crime was so horrible that to place you on probation would send the wrong message.

The trial court based the denial of probation primarily on the fact that to do so would depreciate the seriousness of the offense and that confinement would be an effective deterrence to others. As stated above, appellate review of sentencing is an abuse of discretion standard. *Bise*, 380 S.W.3d at 707. We conclude that the trial court did not abuse its discretion in denying Appellant's request for probation.

### Judicial Diversion

Appellant argues that the trial court erred in denying her request for judicial diversion. She specifically argues that the trial court failed to engage in the proper analysis in denying judicial diversion.

A trial court may grant a defendant's request for judicial diversion and "defer further proceedings against a qualified defendant and place the defendant on probation upon such reasonable conditions as it may require without entering a judgment of guilty." T.C.A. § 40-35-313(a)(1)(A). A defendant is eligible for judicial diversion if he or she is found guilty of or pleads guilty or nolo contendere to a Class C, D, or E felony or a lesser crime, has not previously been convicted of a felony or a Class A misdemeanor, and is not seeking deferral for a sexual offense. T.C.A. § 40-35-313(a)(1)(B)(i). Appellant was convicted of voluntary manslaughter and aggravated assault, both Class C felonies. She had two previous charges as a juvenile of assault that were disposed of non-judicially. Therefore, she had not been previously convicted of a felony or Class A misdemeanor. She was eligible for judicial diversion.

Judicial diversion allows the trial court to defer further proceedings without entering a judgment of guilt and to place the defendant on probation under reasonable conditions. T.C.A. § 40-35-313(a)(1)(A). When the probationary period expires, if the defendant has completed probation successfully, the trial court will dismiss the proceedings against the defendant with no adjudication of guilt. *See* T.C.A. § 40-35-313(a)(2). The defendant may then apply to have all records of the proceedings expunged from the official records. *See* T.C.A. § 40-35-313(b). A person granted judicial diversion is not convicted of an offense because a judgment of guilt is never entered. *See* T.C.A. § 40-35-313(a)(1)(A).

The decision of whether to place a criminal defendant on judicial diversion is within the sound discretion of the trial court and that decision will not be reversed on appeal if there is any substantial record evidence to support it. *State v. Bonestel*, 871 S.W.2d 163, 168 (Tenn. Crim. App. 1993), *overruled on other grounds by State v. Hooper*, 29 S.W.3d 1, 9 (Tenn. 2000).

Before determining whether to grant or deny judicial diversion, a trial court must consider the following factors: "(a) the accused's amenability to correction, (b) the circumstances of the offense, (c) the accused's criminal record, (d) the accused's social history, (e) the status of the accused's physical and mental health, and (f) the deterrence value to the accused as well as others." *Id.* at 168. Additionally, the trial court should consider the accused's attitude, behavior since arrest, emotional stability, current drug use, past employment, home environment, marital stability, family responsibility, general reputation, and the likelihood that judicial diversion will serve the ends of justice and best interests of both the public and the accused. *See State v. Cutshaw*, 967 S.W.2d 332, 343-44 (Tenn. Crim. App. 1997). In addition, this Court has stated the following:

> Moreover, the record must reflect that the court has weighed all of the factors in reaching its determination. The court must explain on the record why the defendant does not qualify under its analysis, and if the court has based its determination on only some of the factors, it must explain why these factors outweigh the others.

*State v. Electroplating, Inc.*, 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998) (citation omitted).

We review a trial court's decision on whether or not to grant judicial diversion under an abuse of discretion standard. *See Cutshaw*, 967 S.W.2d at 344. Where the trial court follows the required procedure for determining whether or not to grant judicial diversion, we must affirm the trial court's ruling if any substantial evidence exists to support it. *See id.*

In this case, however, the trial judge did not explain her reasoning in denying judicial diversion. When addressing Appellant's request for judicial diversion, the trial court stated the following, "So, what we have is essentially if she only had the aggravated assault, she could be considered by me for diversion, but because of the finding of an enhancement factor on the voluntary manslaughter, she's not eligible for consideration for diversion." Clearly, the trial court failed to make the requisite findings necessary to support a denial of judicial diversion.

Where a trial court fails to consider all of the appropriate factors and its statement of the reasons for denial is vague and conclusory, this Court will remand the matter for the trial court's reconsideration. *See, e.g., State v. Lewis*, 978 S.W.2d 558, 567 (Tenn. Crim. App. 1997); *see also Cutshaw*, 967 S.W.2d at 344 (holding that where the trial court failed to consider the defendant's personal history and denied diversion because of the nature of the crime, remand for a new sentencing hearing would be necessary if conviction were not reversed on other grounds). If this were the only issue presented on appeal, we would remand this case for the trial court to reconsider the denial of judicial diversion.

However, in the case at hand, we have already determined that the record on appeal amply supports the convictions, that the trial court's denial of probation was appropriate, and that a sentence of confinement is justified. Therefore, it is not necessary for this case to be remanded on the issue of judicial diversion.

## **CONCLUSION**

For the foregoing reasons, we affirm the judgments of the trial court.

_____
JERRY L. SMITH, JUDGE